# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

WILLIAM TUCKER,

                       Petitioner,           :     Case No. 1:20-cv-628

     - vs -                                     District Judge Michael R. Barrett
                                                   Magistrate Judge Michael R. Merz

WARDEN, Belmont
   Correctional Institution,

                                        :

                  Respondent.

---

# REPORT AND RECOMMENDATIONS

---

        This habeas corpus case, brought *pro se* by Petitioner William Tucker pursuant to 28 U.S.C. § 2254, is before the Court for decision on the merits. Relevant filings are the Petition (ECF No. 1), the State Court Record (ECF No. 6), the Return of Writ (ECF No. 7), and Petitioner's Reply (ECF No. 15).

        On April 28, 2021, the Court received and filed a request from Petitioner for a copy of his Reply as filed (ECF No. 18). That request is GRANTED and the Clerk shall forthwith furnish Plaintiff, without fee, with a copy of his Reply showing the CM/ECF header which is necessary for compliance with the Court's record citation rule.

        The same document relates Petitioner's belief that the State had fifteen days in which to file a response to his Reply. However, no rule or practice of this Court anticipates such a filing and the State has neither sought nor received leave to file such a response.

The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 16).

**Litigation History**

In January of 2017, the Butler County Grand Jury indicted Tucker on two counts of aggravated arson in violation with Ohio Revised Code § 2909.02(A)(1), two counts of aggravated arson in violation with Ohio Revised Code § 2909.02(A)(2), and two counts of felony murder in violation with Ohio Revised Code § 2903.02(B). (Indictment, State Court Record, ECF No. 6, Exhibit 1). Tucker was indicted along with his uncle Lester Parker. The State's theory was that Parker, intending to collect insurance proceeds, hired Tucker to burn his residence. A firefighter, Patrick Wolterman, was killed while fighting the fire.

A jury found Tucker guilty of two counts of aggravated arson and one count of murder. After merging counts under Ohio Revised Code § 2941.25, the trial court sentenced Tucker to fifteen years to life imprisonment. *Id.* Ex. 5. Represented by new counsel, Tucker appealed to the Ohio Twelfth District Court of Appeals which affirmed the conviction. *State v. Tucker,* 2019-Ohio-911 (Ohio App. 12th Dist. Mar. 18, 2019), appellate review declined, 157 Ohio St. 3d 1484 (2019).

Tucker filed his Petition for Writ of Habeas Corpus in this Court on August 6, 2020, the date he deposited it in the prison mail system. He pleads the following grounds for relief:

> **Ground One:** Evidence was insufficient to support convictions and the verdict was against the manifest weight of the evidence.
>
> **Ground Two:** Trial court erred to the prejudice of Tucker where it failed to grant his motion for relief from prejudicial joinder.
>
> **Ground Three:** The State of Ohio engaged in prosecutorial misconduct at trial prejudicing the jury so that they clearly lost their

way in convicting Tucker and causing a manifest injustice, due to being deprived of fair trial.

(Petition, ECF No. 1, PAGEID 5, 9, 13).

**Ground One:  Insufficient Evidence; Verdict Against the Manifest Weight of the Evidence**

In his First Ground for Relief, Tucker asserts his conviction is supported by constitutionally insufficient evidence and is against the manifest weight of the evidence.  These two claims are frequently pleaded together as Tucker did in his First Assignment of Error on direct appeal.

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

As Respondent asserts, a weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  However, an allegation that a verdict was entered upon insufficient evidence does state a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In*

*re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*).

When an appellant combines these two claims in one assignment of error, an Ohio court of appeals will usually decide them together, as the Twelfth District did here, writing:

> [*P6]  THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTIONS AND THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

> [*P7]  Tucker argues that the state's evidence was legally insufficient to convict him of the aggravated arson counts as the evidence against him was entirely circumstantial. Tucker further argues that his convictions were against the weight of the evidence.

> [*P8]  The concept of legal sufficiency of the evidence refers to whether the conviction can be supported as a matter of law. *State v. Everitt*, 12th Dist. Warren No. CA2002-07-070, 2003-Ohio-2554, ¶ 10. In reviewing the sufficiency of the evidence, an appellate court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact would have found all the essential elements of the crime proven beyond a reasonable doubt. *Id*.

> [*P9]  To determine whether a conviction is against the manifest weight of the evidence, a reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18. A finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

[*P10] The trial evidence revealed that Parker, who lived with his wife Bertha at 1310 Pater Avenue in Hamilton, Ohio, had debts exceeding $143,000. On the day of the fire, approximately $60,000 of those debts were past due. Shortly before Christmas Eve 2015, Parker began moving various items out of 1310 Pater Avenue. Items removed included framed family photographs, decorative objects and mementos, and important documents. On December 27, 2015, Parker and Bertha went to Las Vegas on a planned vacation.

[*P11] Tucker, originally from Hamilton, Ohio, resided in Richmond, Kentucky at the time of the fire. During the evening hours of December 27, 2015, Kim Brooks, one of Tucker's girlfriends, requested that Courtney Basinger drive to Richmond to bring Tucker back to Hamilton. Basinger understood that she was bringing Tucker to Hamilton so that he could obtain oxycodone tablets. Basinger understood that she would be compensated for transporting Tucker with gas money and oxycodone.

[*P12] Basinger was accompanied by Brooks, Basinger's two children, and the children's teenaged babysitter. Basinger met Tucker at a CVS Pharmacy in Richmond. Tucker was carrying a gym bag. Upon their return to Hamilton, Basinger dropped off the children and the babysitter and she, Tucker, and Brooks drove to the east side of Hamilton.

[*P13] Tucker instructed Basinger to park on Grand Boulevard between Pater Avenue and Allstatter Avenue. Basinger testified that Tucker exited the vehicle with the gym bag and walked towards Pater Avenue. Tucker then turned onto Pater Avenue and disappeared from her view as he continued up the street. Basinger estimated that Tucker returned to the vehicle approximately 20 minutes after leaving. As he approached the vehicle, he was breathing heavily, carrying the gym bag, a gas can, and a padlock. Basinger's vehicle was confirmed to have been in the vicinity of 2400-2510 Grand Boulevard on December 28, 2015 at 12:45 a.m.

based upon a police cruiser license plate reader report. Google GPS data taken from Basinger's cellular phone records indicated that her phone was stationary between 12:41 a.m. and 12:52 a.m.

 [*P14]  At 1:05 a.m. on December 28, 2015, Officer Brian Gleason of the Hamilton Police Department was dispatched to 1310 Pater Avenue in reference to an intrusion alarm. Upon arrival he discovered smoke coming from the home. He conducted a perimeter sweep and noted that the rear cellar doors to the home were open. It was later determined that the cellars doors had been secured by a hasp and padlock. Based on damage to the hasp, detectives believed that it had been broken off with a pry tool.

 [*P15]  The fire department responded at 1:15 a.m. Firefighter Wolterman entered the home through the front door. By then, however, an arson fire set in the home's basement had severely damaged the joists supporting the first floor. The floor collapsed and Wolterman fell through to the basement and he perished from the effects of the fire.

 [*P16]  In the ensuing investigation, Detective Webb of the Hamilton police department travelled to Richmond to question Tucker about the fire. Tucker denied any involvement and claimed that he was in Richmond when the fire occurred.

 [*P17]  The evidence indicated that Tucker routinely used the cellular phones of friends and family. Tucker also communicated via Facebook messenger.

 [*P18]  Detectives obtained records for the cellular phones of Parker, Tucker's brother Stacy, Tucker's girlfriend Linda Rose, a prepaid cellular phone Parker purchased and activated while he was in Las Vegas and a pay phone in a Marathon gas station parking lot located across from the Cove Motel in Hamilton.

 [*P19]  Stacy testified that he and Parker rarely spoke to one another. However, on December 20, 2015, eight days prior to the fire, records indicated a 27-minute call, initiated by Parker to Stacy's cellular phone.

 [*P20]  Although Linda Rose knew neither Parker nor his wife Bertha, a call was placed from her cellular phone to Parker's cellular phone on December 27, 2015 at 1:38 p.m. The call lasted 27 seconds.

[*P21]  At 3:15 a.m., on December 28, 2015, Tucker sent Rose a Facebook message that read, "Baby Doll. Done with the job. Got to get some rest and call you tomorrow."

[*P22]  During the afternoon of December 28, 2015, there were four calls between Stacy's cellular phone and either Parker's cellular phone or Parker's prepaid Las Vegas phone. An additional call occurred between Stacy's cellular phone and Parker's cellular phone on December 29, 2015 at 11:22 a.m.

[*P23]  Tucker and Brooks stayed at the Cove Motel in Hamilton on December 29 and left on December 30, 2015. On December 30, 2015 there were seven phone calls placed from either Parker's cellular phone or his Las Vegas prepaid phone to the pay phone across the street from the Cove Motel.

[*P24]  James Parker (unrelated) dated Parker's daughter, Melissa Jones. He testified that in June 2015 he was helping Parker install siding on Parker's garage located next to 1310 Pater Avenue. He commented to Parker about recent renovations to 1310 Pater Avenue. Parker told him that the renovations had occurred because of a fire that he and his nephew had set for  "insurance reasons."

[*P25]  At trial, Tucker testified and admitted that he lied to the detective who questioned him about his whereabouts on the morning of the fire. Tucker admitted that Basinger had transported him to the area of Pater Avenue where he briefly left the vehicle. However, Tucker claimed that his purpose was not to set a fire but to obtain oxycodone tablets from Melissa Jones. Tucker asserted that he had arranged to meet Melissa around midnight on Allstatter Avenue where he purchased 30 oxycodone tablets from her and left.

[*P26]  Upon a thorough review of the record, this court concludes that the jurors did not lose their way in finding Tucker guilty. The state presented substantial circumstantial evidence establishing that Tucker and Parker conspired to commit arson and that Tucker was the individual who set fire to Parker's home. Tucker was in communication with Parker before and after the fire and admitted he was on the scene at the very moment the fire started. Basinger testified that Tucker was carrying a gas can upon returning to the vehicle.

[*P27]  Both Tucker and Parker testified. Parker denied being involved in the fire and claimed that the state's witnesses, including both of his daughters, were liars. Tucker's defense case rested on the likelihood of jurors believing that he just happened to plan to meet

> Parker's daughter a block away from her father's home at the precise time an arson fire was committed there. The jury is in a better position than this court to weigh credibility. This is not a case where the evidence weighs heavily against the conviction. This court's determination that the greater weight of the evidence supports Tucker's conviction is dispositive of the issues of the sufficiency of the evidence. *Jones,* 2013-Ohio-150 at ¶ 19. This court overrules Tucker's first assignment of error.

*State v. Tucker, supra.*

As the second-last sentence just quoted from this opinion implies, if a verdict is not against the manifest weight of the evidence, logically there must be sufficient evidence to support the verdict. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge

> simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee*, 626 F.3d 878, 887 (6th Cir. 2010).

Most of Tucker's argument in his Reply focuses on two issues: Courtney Basinger should not have been believed and the evidence against him was circumstantial. As to Basinger's credibility, he argues she should not be believed because of inconsistencies in her various accounts of the events in suit and she was a persistent drug user who had a motive to lie to get reward money to purchase drugs. Tucker correctly emphasizes that these are acceptable means of impeachment and that he had a right to use them to persuade the jury that Basinger should not be believed. He correctly notes "impeachment evidence falls squarely within the Supreme Court's Confrotation [sic] Clause precedents" (Reply, ECF No. 15, PageID 2431). Had Tucker's counsel been prevented from confronting Basinger with this impeaching evidence, Tucker would have a claim under the Confrontation Clause. Had his attorney failed to use this impeaching evidence, he could have a claim of ineffective assistance of trial counsel. But the bottom line is that issues of witness credibility are for the trier of fact to resolve and here the jury resolved them, despite the impeaching evidence, against Tucker. Federal habeas courts do not reweigh or reconsider the credibility of witness testimony. *Brooks, supra*.

Tucker's other complaint in his sufficiency of the evidence claim is that the case against him was so strongly built on circumstantial evidence. There is a strong popular sense that somehow circumstantial evidence is weaker than direct evidence, but the law does not recognize that distinction. Nor should it, for sometimes circumstantial evidence is much stronger than direct

10

testimony. "[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960)(Brennan), citing *Rogers* v. *Missouri Pacific R. Co*., 352 U.S. 500, 508, n. 17(1957).

For example, in a rape case, DNA analysis can limit the possible contributors of DNA to one in a figure many times the current male population of the planet. Conversely, many of the first 250 men exonerated on the basis of DNA evidence had been identified by direct testimony of victims. CONVICTING THE INNOCENT: WHERE CRIMINAL PROSECUTIONS GO WRONG – BRANDON L. GARRETT (2012). There is no DNA evidence in this case, but DNA evidence in any case is plainly circumstantial.

In addition to DNA analysis, contemporary electronic technology provides many additional opportunities to gather circumstantial evidence. For example, the Twelfth District found:

> Basinger's vehicle was confirmed to have been in the vicinity of 2400-2510 Grand Boulevard on December 28, 2015 at 12:45 a.m. based upon a police cruiser license plate reader report. Google GPS data taken from Basinger's cellular phone records indicated that her phone was stationary between 12:41 a.m. and 12:52 a.m.

*State v. Tucker, supra*, ¶ 13. Additional circumstantial evidence of cellphone records contributed to the case against Tucker. *Id.* at ¶¶ 17-23. Circumstantial evidence is, of course, also subject to impeachment, but the jury here clearly accepted the authenticity and explanatory power of the circumstantial evidence presented. Circumstantial evidence may be misinterpreted, but it cannot lie.

"Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on

circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. *Holland v. United States*, 348 U.S. 121(1954); *State v. Kulig*, 37 Ohio St. 2d 157 (1974), overruled on other grounds by *State v. Jenks*, 61 Ohio St. 3d 259 (1991).

"Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011), quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1993); *United States v. Wettstain,* 618 F.3d 577, 583 (6th Cir. 2010); *United States v. McAuliffe,* 490 F.3d 526, 537 (6th Cir. 2007); *United States v. Kelley,* 461 F.3d 817, 825 (6th Cir. 2006); *United States v. Reed,* 167 F.3d 984, 992 (6th Cir. 1999); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992).

Based on this analysis, Tucker's insufficient evidence claim is without merit and should be dismissed with prejudice.

**Ground Two: Prejudicial Joinder**

Tucker was indicted along with Lester Parker and they were tried together, despite Tucker's objection. Tucker raised a claim of prejudicial joinder on appeal and the Twelfth District decided it as follows:

> [*P29] THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHERE IT FAILED TO GRANT DEFENDANT'S MOTION FOR RELIEF FROM PREJUDICIAL JOINDER.

> [*P30] Tucker argues that the trial court plainly erred when it did not sever his joint trial. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to

prevent a manifest miscarriage of justice. Crim.R. 52(B); *State v. Lott*, 51 Ohio St.3d 160, 164, 555 N.E.2d 293 (1990).

[*P31]  Crim.R. 8(B) allows for joinder of defendants in the same indictment. Joinder of defendants and the avoidance of multiple trials is favored in the law. *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980). Joinder conserves judicial and prosecutorial time, lessens the considerable expense of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries. Id. "[J]oinder of defendants is proper so long as all defendants participated in the same series of transactions leading to the charges even though not all defendants participated in every act. * * * Not all defendants need be charged in each count * * * nor would differing levels of culpability among defendants necessarily justify severance." *State v. Schiebel*, 55 Ohio St.3d 71, 88-89, 564 N.E.2d 54 (1990).

[*P32]  Crim.R. 14 permits a trial court to sever a joint trial and grant separate trials if joinder has a prejudicial effect on the accused. However, the accused bears the burden of proving prejudice. *State v. Coley*, 93 Ohio St.3d 253, 259, 2001-Ohio-1340, 754 N.E.2d 1129 (2001). "The test is 'whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way — by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever.'" *Schiebel* at 89, quoting *United States v. Castro*, 887 F.2d 988, 996 (9th Cir.1989).

[*P33]  A defendant may establish prejudice sufficient to warrant severance "'when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant.'" *State v. Walters*, 10th Dist. Franklin No. 06AP-693, 2007-Ohio-5554, ¶ 25, quoting *Zafiro v. United States*, 506 U.S. 534, 539, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993). Defendants "are not entitled to severance merely because they have a better chance of acquittal in separate trials." *Zafiro* at 540.

[*P34]  Tucker argues that substantial evidence that was only relevant to Parker's charges could have erroneously and prejudicially implicated him in the conspiracy. Specifically, Tucker points to the evidence of Parker's financial distress, Parker's removal of items from the home before the fire, Parker's continued gambling in Las Vegas after the fire, and other evidence circumstantially implicating Parker in the arson. Tucker argues that because it was

undisputed that Parker was in Las Vegas at the time of the fire then jurors may have concluded that the Tucker must have set the fire simply because he was the only other codefendant who was available to accomplish the task.

[*P35] However, there is "no resulting prejudicial effect when the evidence of each crime as alleged against each defendant is simple and distinct." *State v. Wyche*, 10th Dist. Franklin No. No. 87AP-878, 1989 Ohio App. LEXIS 647, *9 (July 19, 1989). "In such cases, the jury is capable of separating the proof required for each charge as to the individual defendants." Id., citing *State v. Roberts*, 62 Ohio St.2d 170, 175, 405 N.E.2d 247 (1980).

[*P36] The evidence related to Parker's motivation to commit arson and his preparations for the arson are simple and distinct from the evidence related to Tucker's involvement in the conspiracy and there is no indication in the record that the jurors would have had any difficulty in separating the evidence as it related to each codefendant. And because this was a conspiracy, much of the evidence inculpating Parker in the offense was relevant and admissible against Tucker to establish the conspiracy.

[*P37] At oral argument, appellate counsel specifically argued the inadmissibility and resulting prejudice from James Parker's testimony. Parker testified that Parker told him that he and an unidentified nephew had earlier set a fire for insurance reasons. This court agrees that this testimony may not have been admissible in a stand-alone trial against Tucker. However, this court does not find that the court plainly erred in failing to, *sua sponte*, sever Tucker's trial following this testimony. As discussed in the prior assignment of error, the jurors convicted Tucker on ample circumstantial evidence of his role in the arson. Given the substantial evidence, this court cannot clearly find that jurors would have found Tucker not guilty in a stand-alone trial that excluded this testimony.

[*P38] In addition, the court properly instructed the jury on the rules concerning the consideration of separate evidence in a joint trial and this court presumes that jurors follow the trial court's admonitions. *State v. Loza*, 71 Ohio St.3d 61, 75, 1994-Ohio 409, 641 N.E.2d 1082 (1994). Tucker has established neither error nor plain error. This court overrules Tucker's second assignment of error.

*State v. Tucker, supra*.

The Warden argues Ground Two presents only a question of state law (Return, ECF No. 7,

PageID 2386). Tucker does not respond to this point in his Reply. In arguing the case on appeal, although he did not mention any specific clause of the United States Constitution, Tucker relied on *Bruton v. United States*, 391 U.S. 123 (1968), for the proposition that "joinder is not favored if trying the two parties together will cause significant prejudice to Defendant's right to a fair trial." The Magistrate Judge concludes Tucker sufficiently relied on federal law to fairly present this constitutional claim – denial of a fair trial by prejudicial joinder – to the Twelfth District so that its decision on the merits of the Second Assignment of Error is entitled to deferential review under 28 U.S.C. § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Burt v. Titlow*, 571 U.S. 12, 20 (2013).

The United States Supreme Court has held "[i]mproper joinder does not, in itself, violate the Constitution." *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986). To obtain federal habeas relief on a misjoinder claim involving state law, a petitioner "must show that misjoinder of the counts 'result[ed] in prejudice so great as to deny a defendant his . . .right to a fair trial." *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007)(quoting *Lane*, 474 U.S. at 446 n. 8).

In his Reply, Tucker acknowledges that he must prove actual prejudice (ECF No. 15, PageID 2435). To do so he argues that a substantial part of the evidence admitted at trial was relevant only to Lester Parker. While that is true, he and Parker were part of the same transaction and conspiracy and there was little chance the jury would use the evidence about Parker to convict Tucker. The State had to prove that Parker ordered the fire set and did so by showing he had very substantial debt, much of it overdue, that he had removed family memorabilia from the house, and that he was out of town when the house burned, giving him an alibi should it be alleged he set the fire himself. None of this tended to implicate Tucker: Parker did not owe Tucker money, Tucker was not accused of helping Parker remove the memorabilia, etc. The jury could easily keep the two parts of the transaction separate.

Tucker has not shown that the Twelfth District's decision is an unreasonable application

15

of *Lane* or other Supreme Court precedent on improper joinder.  The Twelfth District's decision is therefore entitled to deference and Ground Two should be dismissed.

**Ground Three:  Prosecutorial Misconduct**

In his Third Ground for Relief, Tucker asserts he was denied a fair trial by the misconduct of the prosecutors.  In the Petition he specified that the prosecutor made "improper and prejudicial remarks."  (ECF No. 1, PageID 13).  The specific instances of misconduct complained of in the Petition are (1) the prosecutor's statement in closing argument "so don't be misled by statements of attorneys telling you otherwise," and (2) the prosecutor's invitation to the jury to experiment with time intervals with their watches. *Id.* at PageID 13-16.  In both instances defense counsel objected and the judge gave a curative instruction.

In his Reply, Tucker asserts additional instances of prosecutorial misconduct by:

> (1) stating to the jury "if you find beyond a reasonable doubt Lester Parker solicited this fire, but you're not real sure for whatever reason that Billy Tucker set the match, you can still find him guilty";
>
> (2) "by speaking with a witness (firefighter Joseph Geis) outside the court room the day before Geis came in to testify;
>
> (3) by allowing James Parker testify about Lester Parker's past insurance claims.
>
> (4) when it failed to release the 68 page NIOSHA report to the defense that explains sixteen diferent [sic] violations made by the fire department at the fire that were contributing factors in the death of firefighter Patrick Wolterman.

(Reply, ECF No. 15 at PageID 2438-39).

Tucker presented a prosecutorial misconduct claim to the Twelfth District which decided it as follows:

16

**[*P59]** THE STATE OF OHIO ENGAGED IN PROSECUTORIAL MISCONDUCT AT TRIAL.

**[*P60]** Tucker argues that the state committed prosecutorial misconduct during closing argument, which deprived him of a fair trial. To demonstrate that the state deprived him of a fair trial, Tucker must establish that the prosecutor's remarks were improper and prejudicially affected his substantial rights. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62, 857 N.E.2d 547. In making such a determination, the focus is upon the fairness of the trial, not upon the culpability of the prosecutor. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. A finding of prosecutorial misconduct will not be grounds for reversal unless the defendant can establish that he has been denied a fair trial because of the prosecutor's actions. *State v. Smith*, 12th Dist. Warren No. CA2017-02-013, 2017-Ohio-7540, ¶ 29.

**[*P61]** Tucker argues that state committed misconduct when the prosecutor stated "so don't be misled by statements of attorneys telling you otherwise." Tucker argues that the prosecutor was implying that defense counsel had been deceitful. Tucker's counsel objected and the trial court sustained the objection, instructing jurors to disregard the statement. This court does not find that the comment deprived Tucker of a fair trial. As discussed above, the jury convicted Tucker on substantial evidence of his guilt. Moreover, this court presumes that jurors followed the trial court's instructions to disregard the comment. *Loza*, 71 Ohio St.3d at 75.

**[*P62]** Next, Tucker argues that the state committed misconduct when the prosecutor encouraged the jury to engage in "experiments" with regard to the passage of time. The prosecutor encouraged jurors to "take out your watches" and allow 27 seconds to elapse, which was the length of the call between Linda Rose's cellular phone and Parker's cellular phone on the day before the fire. The prosecutor argued that this would demonstrate that 27 seconds was sufficient time for Tucker and Parker to confirm that they were proceeding with the arson plan.

**[*P63]** Later, the state recommended that the jurors "take out a stopwatch and have an 11-minute moment of silence," i.e., the time that Basinger's phone remained stationarywhile she was parked on Grand Boulevard. Tucker objected, and the court indicated that it did not want the prosecutor encouraging jurors to count the passage of time, off the record, and during deliberations. Instead, the court

permitted the prosecutor to make his point by holding a five-minute moment of silence during closing argument.

[*P64] Jurors are obligated to decide a case based only upon the evidence and arguments presented during the trial. *State v. Villarreal*, 12th Dist. Butler No. CA2004-02-035, 2005-Ohio-1924, ¶ 37, citing *State v. Taylor*, 73 Ohio App.3d 827, 831, 598 N.E.2d 818 (4th Dist.1991). It is therefore misconduct for a juror to engage in any independent inquiry or experimentation concerning the matter at trial. *Taylor* at 831. Juror misconduct is only grounds for reversal if it results in prejudice to the defendant. *Id*., citing *Armleder v. Lieberman*, 33 Ohio St. 77 (1877).

[*P65] This court does not find that juror misconduct occurred or that the prosecutor encouraged juror misconduct. Juror misconduct cases involving experimentation typically involve a juror using extraneous tools, procedures, or methods to test a hypothesis, outside of jury deliberations. See, e.g., *State v. Doan*, 1st Dist. Hamilton No. C-940330, 1995 Ohio App. LEXIS 4395 (juror conducted lighting experiment by putting lipstick on her arm to simulate a bruise and tried to see it in a darkened room); *State v. Hubbard*, 8th Dist. Cuyahoga No. 92033, 2009-Ohio-5817 (juror used binoculars to determine how much she could observe from 50 feet away).

[*P66] Out-of-court experimentation by a juror is improper for various reasons, including that the variables that might affect the outcome are not known or controlled by the court or parties and could differ from the facts in evidence. However, the passage of time is a constant and is also a common experience of everyday life. Therefore, the risks inherent in jurors conducting experiments are not present when asking jurors to consider the passage of time as it relates to the theory of the case. This court overrules Tucker's fifth assignment of error.

*State v. Tucker, supra.*

Thus the only two instances of asserted prosecutorial misconduct that Tucker presented to the state courts are the two he brought forward in his Petition.  Because he did not present to the state courts the four new instances of asserted misconduct he raises in his Reply, he has procedurally defaulted those claims.  Moreover, new claims cannot be added to a habeas case in the reply.  *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d

500, 504 (6th Cir. 2005).

Regarding the two claims that were raised both in the Twelfth District and in the Petition, the Magistrate Judge concludes the Twelfth District's decision is not an objectively unreasonable application to clearly stablished Supreme Court precedent.

> On habeas review, "the relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 91 L. Ed. 2d 144, 106 S. Ct. 2464 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 40 L. Ed. 2d 431, 94 S. Ct. 1868 (1974)).

*Bates v. Bell*, 402 F.3d 635 (6th Cir. 2005). With both prosecutorial remarks objected to here, the trial judge gave a curative instruction which the jury is presumed to have followed. Tucker raises the usual argument that a bell once rung in front of the jury cannot be unrung, but both objected-to remarks were argumentative and not the mentioning of inadmissible evidence. Tucker's counsel did not consider the result sufficiently prejudicial to move for a mistrial.

Although the Twelfth District did not cite Supreme Court case law in its decision, it did cite to Ohio case law adopting the federal standard. Its decision is not an unreasonable application of Supreme Court precedent and is therefore entitled to deference under 28 U.S.C. § 2254(d)(1). Tucker's Third Ground for Relief should be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

be permitted to proceed *in forma pauperis*.


April 29, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

### 'NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #


### NOTICE REGARDING RECORD CITATIONS#


The attention of all parties is called to S. D. Ohio Civ. R. 7.2(b)(5) which provides:

> (5) **Pinpoint Citations**. Except for Social Security cases, which must comply with S.D. Ohio Civ. R. 8.1(d), all filings in this Court that reference a prior filing must provide pinpoint citations to the PageID number in the prior filing being referenced, along with a brief title and the docket number (ECF No. ___ or Doc. No. ___) of the document referenced.

The Court's electronic filing system inserts in all filings hyperlinks to the place in the record which has been cited following this Rule. However, as with most computer systems, the CM/ECF program cannot read pinpoint citations which do not follow the Rule precisely. For example, the first pinpoint citation in ODRC's Reply reads "Plaintiff argues that he could not bring this action until "administrative remedies as (sic) are exhausted (sic)." (Doc. 80, PageId# 987)." The correct citation would have been Doc. No. 80, PageID 987." Because Defendant added the "#" symbol, the program failed to inset a hyperlink. Use of this software is mandated by the Judicial Conference of the United States and cannot be locally modified. **The parties are cautioned to comply precisely with S. D. Ohio Civ. R. 7.2(b)(5) in any further filings.**